IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Marvin Lee Williams,<br>                           Petitioner,<br>vs.<br>Warden Dennis Bush,<br>                           Respondent. | Civil Action No. 6:17-735-RMG-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

        The petitioner, a state prisoner who is represented by counsel, seeks habeas corpus relief pursuant to 28 U.S.C. § 2254. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND

        The petitioner is currently incarcerated at Broad River Correctional Institution in the South Carolina Department of Corrections ("SCDC") (doc. 1 at 1). The petitioner was indicted by the Colleton County Grand Jury in June 2008 for two counts of Assault and Battery with Intent to Kill ("ABWIK"); two counts of Possession of a Weapon During the Commission of a Violent Crime; seven counts of Assault with Intent to Kill ("AWIK"); Assault and Battery of a High and Aggravated Nature ("ABHAN"); Pointing and Presenting a Firearm; Grand Larceny; and Failure to Stop for a Blue Light. The petitioner was represented on the charges by Byron E. Gipson.

        On March 31, 2009, a competency hearing was held pursuant to *State v. Blair*, 273 S.E.2d 536 (S.C. 1981). The petitioner was found competent to stand trial. After a jury was selected, the petitioner pled guilty to ABWIK (2 counts), AWIK (7 counts), Possession of a Weapon During the Commission of a Violent Crime (2 counts), ABHAN, and Pointing

and Presenting a Firearm before the Honorable Perry M. Buckner, Circuit Court Judge. In exchange for the pleas of guilty to the above charges, the State agreed to dismiss the charges of Grand Larceny and Failure to Stop for a Blue Light. On the same date, the petitioner was sentenced by Judge Buckner to 38 years in prison on all of the above charges.

***Underlying Case Facts*[1]**

On February 21, 2008, at approximately 12:30 p.m., the petitioner was in the home of his girlfriend Levonda Sharpe in Colleton County. The petitioner and his girlfriend began to argue. At some point during the argument, the petitioner assaulted Ms. Sharpe by striking her with his hands. He then choked her to the point that she defecated on herself. This was all done in the view of Levonda's mother, Tawana Sharpe.

Subsequently, the petitioner's brother, David Williams, arrived at the residence. He had given the petitioner a ride to the residence earlier. After the petitioner's brother entered the residence, the petitioner pulled a gun and pointed it at his brother and fired. The petitioner then fired the gun at Tawana Sharpe, striking Lavonda Sharpe in the face and arm. The petitioner then left the residence. Lavonda Sharpe left the residence running into the woods. The petitioner fired shots after Lavonda Sharpe as she fled.

The petitioner got into his brother's car, and they attempted to leave the residence. Someone had already called 911. Sgt. Jackie Lawson with the Colleton County Sheriff's Office responded and blocked the vehicle in so the Williams brothers could not leave the area. Upon seeing Sgt. Lawson, the petitioner took the gun he used to shoot Lavonda Sharpe and placed it in the front passenger floorboard of the car. Sgt. Lawson approached the petitioner, who was in the passenger seat. He told the petitioner several times to "show him his hands." The petitioner refused. After about a minute or two, Sgt.

---

[1] These facts are taken from the guilty plea transcript (app. 121-49).

2

Lawson holstered his firearm, pulled out his handcuffs, and attempted to get the petitioner out of the vehicle.

At that time, the petitioner got out of the car with the gun he had used earlier and shot Sgt. Lawson who fell to the ground. The petitioner attempted to kill Sgt. Lawson by re-racking his gun several times, but he could not get the gun to fire. Eventually, he fired one more shot at Sgt. Lawson. Sgt. Lawson stated: "You got a chance to get away, get away." This incident was recorded on Sgt. Lawson's car video camera.

The petitioner then pointed the gun at his brother trying to get his brother to drive him away from the scene. His brother refused. The petitioner then stole Sgt. Lawson's vehicle and drove away, reaching speeds of 140 miles per hour. He was pursued by the police in a high speed chase that ended at the petitioner's family's home where he barricaded himself inside. Numerous sheriff's deputies, Walterboro Police Department officers, and Department of Natural Resources officers responded to the home. They went up on the porch of the home. One officer had obtained a key to the residence, and when he opened the door, the petitioner leveled a shotgun at the officers and fired. The officers dove off the front porch, ran for cover, and returned fire. The petitioner fired multiple shots at law enforcement with a shotgun from inside the house. The petitioner was shot in the legs. Portions of this incident were also recorded on video.

Subsequently, at the end of a standoff, the petitioner surrendered and was brought out of the house. He was arrested and taken to the hospital for treatment of his leg wounds (app. 121-49).

*Direct Appeal*

On April 19, 2010, the petitioner appealed his convictions to the South Carolina Court of Appeals. Lanelle C. Durant of the South Carolina Office of Appellate Defense represented the petitioner. Appellate counsel raised the following issue:

3

> Did the trial court err in refusing to grant a continuance in order for appellant to undergo second evaluation by a forensic psychiatrist because the issue of competency had not been resolved thereby rendering appellant's guilty plea involuntary?

(Doc. 7-3 at 3). The State filed a responsive brief. On April 12, 2011, the South Carolina Court of Appeals affirmed the petitioner's convictions and sentences in an unpublished opinion (doc. 7-5). The Remittitur was issued on May 17, 2011 (doc. 7-6).

**PCR**

On May 2, 2011, the petitioner filed an application for post-conviction relief ("PCR")(C.A. #2011-CP-0395), raising the following claims:

1. Ineffective assistance of counsel
2. Involuntary guilty plea

(App. 150-55). The State filed a return on November 8, 2012 (app. 157-62). On August 28, 2013, an evidentiary hearing was held before the Honorable Deadra L. Jefferson, Circuit Court Judge (app. 164-212). The petitioner was present at the hearing and represented by Tristan Shaffer. The respondent was represented by Ashleigh R. Wilson, Assistant Attorney General.

At the hearing, the petitioner abandoned all grounds for relief except ineffective assistance of counsel for the alleged failure to request a *M'Naughten*[2] evaluation and investigate the possibility of pursuing a not guilty by reason of insanity defense at trial. Plea counsel Byron Gipson testified at the hearing. Counsel testified that based on his investigation, the petitioner was not insane at the time of the crimes, but became depressed and decompensated in pretrial detention after his first meeting with counsel. The PCR court had before it the guilty plea transcript, the Clerk of Court records, the PCR application, the respondent's return, the appellate records, and the petitioner's most recent mental health evaluation, which was a criminal responsibility evaluation. On May 3, 2015, the PCR court

---

[2] "South Carolina has adopted the *M'Naghten* [or *M'Naughten*] test to determine insanity." *State v. Lewis*, 494 S.E.2d 115, 117 (S.C. 1997) (citing *M'Naghten's Case*, 8 Eng.Rep. 718 (1843)).

4

denied and dismissed the PCR application *with prejudice* by an order of dismissal filed March 5, 2015 (app. 222-42). The PCR court noted that it had recessed the evidentiary proceedings for 30 days to have the petitioner evaluated pursuant to *M'Naughten*. The court executed an Order for Criminal Responsibility and Capacity to Conform Evaluation (*M'Naughten*) on September 18, 2013, and the petitioner was then evaluated on May 5, 2014. The PCR court ultimately received the results of the evaluation on January 20, 2015. The evaluation determined that the petitioner was not insane or guilty but mentally ill at the time of the offenses but was malingering psychotic symptoms and intellectual deficits (app. 223 n.1). The PCR court found that the petitioner failed to carry his burden of proving counsel was ineffective for failing to have him mentally evaluated prior to his guilty plea and failing to pursue a not guilty by reason of insanity defense and further found that the petitioner had failed to produce any credible evidence he was incompetent at the time of his guilty pleas (app. 235-36).

## *PCR Appeal*

The petitioner appealed the PCR denial by way of a *Johnson* petition for writ of certiorari to the South Carolina Supreme Court. He was represented on appeal by Robert M. Pachak of the South Carolina Office of Appellate Defense. In the *Johnson* petition, the petitioner raised the following issue:

> Whether counsel was ineffective for failing to request a McNaughton evaluation and in failing to investigate the possibility of pursuing a not guilty by reason of insanity defense?

(Doc. 7-7 at 2). Appellate counsel certified to the South Carolina Supreme Court that the appeal was without merit and asked to withdraw (doc. 7-7 at 11). The petitioner did not file a *pro se* response to the *Johnson* petition. On December 2, 2015, after consideration of the entire record as required by *Johnson v. State*, 364 S.E.2d 201 (S.C. 1988), the South Carolina Supreme Court denied certiorari and granted collateral appellate counsel's request to withdraw (doc. 7-8). The Remittitur was issued on December 18, 2015, and filed in the Colleton County Clerk's Office on December 21, 2015 (doc. 7-9).

5

## FEDERAL PETITION

On March 17, 2017, the petitioner, through counsel, filed a § 2254 petition in this court, raising the following grounds for relief:

> **Ground One:** Ineffective Assistance of Trial/Plea Counsel
> (a) Supporting facts: Trial counsel was ineffective for failing to request an McNaughton evaluation in order to pursue a plea of not guilty.
>
> **Ground Two:** Ineffective Assistance of Trial/Plea Counsel.
> (a) Supporting facts: Counsel did not properly or thoroughly advise Petitioner on the consequences of the plea.
>
> **Ground Three:** Ineffective Assistance of PCR Counsel
> (a) Supporting facts: PCR counsel was ineffective for failing to call an expert to support the claim that trial counsel was ineffective for failing to request a McNaughton hearing in order to pursue a plea of not guilty by reason of insanity. PCR counsel instead relied on the testimony of Petitioner's father to support the claim, who has no psychiatric education.

(Doc. 1 at 6, 8, 9). On April 5, 2017, the respondent filed a motion for summary judgment (doc. 6) and a return and memorandum (doc. 7). On May 19, 2017, the petitioner filed his response in opposition to the motion for summary judgment (doc. 11). The respondent filed a reply on May 25, 2017 (doc. 13).

## APPLICABLE LAW AND ANALYSIS

*Summary Judgment Standard*

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining

6

whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

***Statute of Limitations***

The petition in this case was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Accordingly, the provisions of the AEDPA apply. *Lindh v. Murphy*, 521 U.S. 320, 336-37 (1997). The respondent first argues[3] that the petition is untimely under the one-year statutory deadline set forth in the AEDPA. The one-year time period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C.

---

[3] As this court recommends that the petition be dismissed as untimely, the respondent's remaining arguments will not be addressed.

§ 2244(d)(1)(A).[4] However, "[t]he time during which a properly filed application for State post-conviction or collateral relief with respect to the pertinent judgment or claim that is pending shall not be counted toward any period of limitation under this subsection." *Id.* § 2244(d)(2). State collateral review tolls the one-year statute of limitations under Section 2244(d)(1)(A) for properly filed pleadings, *Artuz v. Bennett*, 531 U.S. 4, 8 (2000), but it does not establish a right to file within one year after completion of collateral review. *Harris v. Hutchinson*, 209 F.3d 325, 328 (4th Cir. 2000).

The petitioner pled guilty and was sentenced on March 31, 2009, and the South Carolina Court of Appeals affirmed the petitioner's conviction and sentence on April 12, 2011. The petitioner's state court convictions became final fifteen days later on April 27, 2011, the expiration of the time in which the petitioner could have timely filed a petition for rehearing with the South Carolina Court of Appeals. *See* Rule 221(a), SCACR (instructing that a petition for rehearing "must be actually received by the appellate court no later than fifteen (15) days after the filing of the opinion, order, judgment, or decree of the court"); Rule 242(c), SCACR (stating "[a] decision of the Court of Appeals is not final for the purpose of review by the Supreme Court until the petition for rehearing or reinstatement has been acted on by the Court of Appeals."); *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) ("[B]ecause [the petitioner] did not appeal to the State's highest court, his judgment became final when his time for seeking review with the State's highest court expired."). Because he did not timely file a petition for rehearing or seek certiorari from the South Carolina Supreme Court, the petitioner is not entitled to the 90 days to petition the United States Supreme court for certiorari. *See* U.S. Sup. Ct. R. 13(1) (stating appellant must file a petition for a writ of certiorari within 90 days of the judgment being appealed); *Gonzalez*, 565 U.S. at 150 ("[T]he judgment becomes final at the 'expiration of the time for seeking such

---

[4]The statute provides other possible start dates for the one-year time period that are not relevant here. *See* 28 U.S.C. § 2244(d)(1)(B)–(D).

8

review'—when the time for pursuing direct review in this Court, or in state court, expires.") (quoting 28 U.S.C. § 2244(d)(1)(A))). Accordingly, the AEDPA statute of limitations began to run on April 28, 2011.

The petitioner filed a PCR application on May 2, 2011, thereby tolling the federal statute of limitations. At that point, four days of untolled time had lapsed between the petitioner's conviction becoming final and the filing of the PCR application. The statute remained tolled until, at the very latest, December 21, 2015, the date the remittitur was filed in the circuit court after the South Carolina Supreme Court's December 2, 2014, order denying the petition for writ of certiorari in the PCR appeal (doc. 7-9). *See Beatty v. Rawski*, 97 F. Supp. 3d 768, 775-76, 780 (D.S.C. 2015) (finding that final disposition of a PCR appeal in South Carolina does not occur until the remittitur is filed in the circuit court, and thus the Section 2254(d)(1) statute of limitations is tolled until that time).[5] Accordingly, at the very latest, the statute of limitations began to run again on December 22, 2015, the day after the remittitur was filed and expired 361 days later on December 17, 2016. The petitioner's federal habeas petition was filed through counsel on March 17, 2017 (doc. 1). Thus, the petition is 91 days late.

To avoid application of Section 2244(d) regarding the timeliness of the instant federal habeas petition, the petitioner must show that the one-year limitations period should be equitably tolled under applicable federal law. *See Holland v. Florida*, 560 U.S. 631 (2010) (concluding that § 2244(d) is subject to the principles of equitable tolling); *Harris v. Hutchinson*, 209 F.3d 325 (4th Cir. 2000) (same). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his

---

[5] "There remains a dispute among the District of South Carolina opinions concerning whether (1) the decision date, (2) the remittitur date, or (3) the date of receipt of the remittitur controls for purposes of calculating the statute of limitations." *Jumper v. Warden of Broad River Corr. Inst.*, C.A. No. 1:15-4848-JFA-SVH, 2016 WL 2893988, at *6 n.4 (D.S.C. Apr. 25, 2016) (citing cases), *R&R adopted by* 2016 WL 2866306 (D.S.C. May 17, 2016).

rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (citation omitted); *see also Holland*, 560 U.S. at 649. Equitable tolling is available only in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Harris*, 209 F.3d at 330. *See also United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004). Thus, to be entitled to equitable tolling, an otherwise time-barred petitioner must present: "(1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir.2003) (*en banc*).

In response to the motion for summary judgment, counsel argues that the petitioner is entitled to equitable tolling because he "has experienced extremely poor mental health, which rendered him unable to timely file his petition" (doc. 11 at 5).[6] Attached to the response is an SCDC report showing dates on which the petitioner received medical attention (doc. 11-1). Counsel argues that the petitioner has had continued medical appointments in order to diagnose and treat his mental illness, and, during the time period following the filing of the Remittitur, the petitioner has had at least 14 authorized absences for medical treatment (doc. 11 at 5 (citing doc. 11-1)). However, as argued by the respondent in the reply, the document provided by the petitioner does not indicate what type of medical treatment the petitioner received on the pertinent dates nor does it indicate that he is incompetent (doc. 13 at 6).

The petitioner has failed to make the required showing that he is entitled to equitable tolling. "As a general matter, federal courts will apply equitable tolling because of a petitioner's mental condition only in cases of profound mental incapacity." *United*

---

[6] Counsel states that the petitioner's health "recently improved enough so that he was able to secure counsel in January 2017 in order to pursue federal habeas relief" (doc. 11 at 5-6). Notably, the federal petition was not filed until March 17, 2017, some six to ten weeks after the alleged improvement in the petitioner's health.

10

*States v. Sosa*, 364 F.3d 507, 513 (4th Cir. 2004) (citing *Grant v. McDonnell Douglas Corp.*, 163 F.3d 1136, 1138 (9th Cir. 1998) (finding equitable tolling based on mental condition to be appropriate "only in exceptional circumstances, such as institutionalization or adjudged mental incompetence")). "In order to establish equitable tolling due to mental impairment, a petitioner must make a threshold showing of incompetence and also demonstrate that such incompetence affected his ability to file a timely habeas petition." *Griffin v. Ransom*, C.A. No. 5:16-HC-2149-FL, 2017 WL 1628883, at *4 (E.D.N.C. Apr. 28, 2017) (citation omitted). *See Johnson v. Lyons*, C.A. No. JKM-16-436, 2016 WL 3027537, at *3 (D. Md. May 27, 2016) (finding petitioner was not entitled to equitable tolling where he failed to offer specifics as to what, if any, mental health disorders he suffered from and how they prevented him from pursuing a timely federal habeas petition); *Brown v. Warden of Kirkland Corr. Inst.*, C.A. No. 5:13-2680-RMG, 2014 WL 5106892, at *9 (D.S.C. Oct. 10, 2014) (finding petitioner failed to show entitlement to equitable tolling of § 2244 statute of limitations where petitioner submitted inmate transfer history showing transfer to psychiatric hospital on five occasions, though none during applicable period, and offered no argument as to why statute should be tolled). Here, the petitioner has made no showing of mental incompetence during the pertinent time period nor has he shown how his alleged mental issues prevented him from timely pursuing his federal habeas petition. Based upon the foregoing, the petition is untimely under the one-year statutory deadline set forth in the AEDPA, and the respondent's motion for summary judgment on this basis should be granted.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 6) be GRANTED and the petition (doc. 1) be DENIED.

**IT IS SO RECOMMENDED.**

| | |
|---|---|
| December 1, 2017 | s/ Kevin F. McDonald |
| Greenville, South Carolina | United States Magistrate Judge |

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 300 East Washington Street
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).